# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

YOSEANI ALVARADO ARISMENDI,

Petitioner,

vs.

DONALD J. TRUMP, et al.,

Respondents.

No. 26-CV-4012-CJW-MAR

**MEMORANDUM OPINION AND ORDER**

_____

Petitioner Yoseani Alvarado Arismendi's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents[1] filed a response. (Doc. 11). Petitioner filed a reply. (Doc. 13). For the following reasons, the Court **denies** the petition.

## I.     BACKGROUND

Petitioner is a citizen of Venezuela. (Docs. 1, at 5; 13, at 2). On September 16, 2022, she entered the United States at or near El Paso, Texas without inspection. (Doc. 13, at 2; Doc. 13-1).[2] She was released into the United States on parole. (Doc. 13-3, at 3). Petitioner timely filed for asylum in 2023 and had authorization to live and work in the United States while awaiting her asylum interview. (Docs. 1, at 2; 13, at 2; 15-1, at 2). On December 5, 2025, petitioner was detained by Immigration and Customs

---

[1] As of filing, respondent Chad Sheehan has not filed an appearance or response. The Court finds his appearance or response not necessary here and thus proceeds in its analysis without them. _See_ (Doc. 11, at 3 n.1) ("[A]ll arguments made on behalf of the [respondents] apply with equal force to Sherriff Sheehan, because [petitioner] is being detained at the request of the United States.").

[2] Petitioner also states that she "came to the United States in 2024." (Doc. 1, at 5). Because that distinction makes no difference for the Court's analysis, the Court merely notes the discrepancy.

Enforcement ("ICE") pursuant to a warrant during a traffic stop in Minneapolis, Minnesota. (Docs. 1, at 7; 13, at 2; 15-3 (warrant for arrest of alien[3])). The same day, she was served a Notice to Appear ("NTA") charging her with (1) being inadmissible for being present in the United States without being admitted or paroled, and (2) not possessing a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document. (Docs. 1, at 5; 13-1, at 2–4); *see* 8 U.S.C. §§ 1182(a)(6)(A)(i), (a)(7)(A)(i)(I). On January 21, 2026, an immigration judge denied her request for a bond hearing for lack of jurisdiction based on the application of mandatory detention under Title 8, United States Code, Section 1225(b)(2)(A). (Doc. 1, at 2, 8; Doc. 13-4).

On February 18, 2026, petitioner filed the instant petition with the Court, requesting immediate release from custody or an individualized bond hearing. (Doc. 1, at 3, 16–18). She also provided the Court with Exhibits 1, 2, 3, and 4. (Docs. 13-1 through 13-4). On February 23, 2026, the Court entered its initial review order. (Doc. 3). On March 9, 2026, respondents filed a response, (Doc. 11), and on March 10, 2026, petitioner filed her reply, (Doc. 13). Respondents also provided the Court with a declaration from Geneva Balencia and Exhibits A[4] and B. (Docs. 15-1 through 15-3). In her reply, petitioner asks that the Court grant her petition and grant her a bond hearing. (Doc. 13, at 1, 14). On March 25, 2026, respondents filed a notice of supplemental

---

[3] The United States Code and the accompanying federal regulations use the term "alien." To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

[4] Both Exhibits 1 and A are petitioner's NTA. (Docs. 13-1 & 15-2).

2

authority. (Doc. 17). Petitioner remains in custody at the Woodbury County Jail in Iowa. (*Id.*, at 2).[5]

## II. LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The right to challenge the legality of a person's confinement "through a petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

## III. DISCUSSION

Petitioner raises two grounds for relief, arguing that "[h]er continued detention is an unlawful violation of due process [and] an incorrect interpretation of immigration

---

[5] Petitioner repeatedly states that she is detained in Nebraska. *See, e.g.*, (Doc. 1, at 2, 3, 4, 18). A search of inmates at the Woodbury County Jail in Sioux City, Iowa, however, shows petitioner to be detained in Iowa, within this district. *See* https://www.woodburycountyiowa.gov/sheriff/inmates. The same is true of an ICE locator search. *See* https://locator.ice.gov/odls/#/results (listing her status as "In ICE Custody" in Iowa at the Woodbury County Jail). Likewise, in her declaration Geneva Balencia states that petitioner "is currently being held at the Woodbury County Jail in Sioux City, Iowa." (Doc. 15-1, at 3).

3

law[.]" (Doc. 1, at 2).[6] She requests that "this Court grant the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241 and enjoin [r]espondent[s'] continued detention of [p]etitioner to ensure her due process right" or, in the alternative that she be "given a bond hearing and the [r]espondents ordered to release [her] upon bond granting." (*Id.*, at 3). Respondents filed a notice of supplemental authority, pointing the Court to *Herrera Avila v. Bondi*, No. 25-3248 (8th Cir. Mar. 25, 2026), and asking this Court to deny petitioner's request for relief. (Doc. 17). The Court begins with the statutory argument.

### A. Statutory Argument

While this case was pending, the Eighth Circuit issued its opinion in *Herrera Avila v. Bondi*, No. 25-3248 (8th Cir. Mar. 25, 2026). After conducting statutory interpretation of both Title 8, United States Code, Sections 1225(b)(2)(A) and 1226(a), the Eighth Circuit determined that Section 1226(a), which permits discretionary release on bond, does not govern the detention of aliens apprehended inside of the United States who have not been lawfully admitted. *Id.* at *9. Rather, those aliens fall under the category contemplated by Section 1225(b)(2)(A), which requires mandatory detention for aliens not lawfully admitted. *Id.* at *11–12. The Court is bound by Eighth Circuit precedent. *Harrington v. Wilber*, 670 F.Supp.2d 958, 967 (S.D. Iowa 2009) ("This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are controlling until overruled by the Eighth Circuit en banc, by

---

[6] Petitioner also makes a claim that her detention is ultra vires. (Doc. 1, at 2); "Agency actions beyond delegated authority are 'ultra vires,' and courts must invalidate them." *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 132 F.3d 1252, 1257 (8th Cir. 1998); *see also Romero v. INS*, 39 F.3d 977, 980 (9th Cir. 1994) (holding that an immigration regulation that is inconsistent with the statutory scheme is invalid). Petitioner does not, however, provide any authority or argument on that issue, and, as such, the Court considers that issue waived. *United States v. Sledge*, 108 F.4th 659, 671 (8th Cir. 2024) (declining to consider an "assertion presented without citations to the record or legal authority").

the Supreme Court, or by Congress." (cleaned up)).  Thus, petitioner's request for habeas corpus relief is **denied** on this ground.

> ### B. *Due Process Clause Argument*

As the government admits, "the *Avila* holding resolves the statutory arguments[.]" (Doc. 16, at 2).  It does not, however, resolve petitioner's second argument, that her detention violations the Due Process Clause of the Fifth Amendment.  The Court addresses this argument next.

"[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality."  *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958).  More specifically, the Supreme Court has found that the Due Process Clause extends to all persons present in the United States regardless of their immigration status.  *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.").  Thus, aliens have due process rights to life, liberty and property.  U.S. Const., amend. V; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976).  "This is because once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Hernandez Marcelo v. Trump*, No. 25-cv-00094, 2025 WL 2741230, at *8 (S.D. Iowa Sept. 10, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

In addition, once the government opts to provide a liberty interest, it cannot arbitrarily revoke that interest without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  "A person's liberty is equally protected by the due process clause, even when the liberty itself is a creation of the State."  *Id.* at 558.  This applies to administrative agencies as well, and "an administrative agency may not apply a new rule

retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984). A person released from custody "has at least an implicit promise" that his release "will be revoked only if he fails to live up to the parole conditions." *Morrissey. v. Brewer*, 408 U.S. 471, 482 (1972).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine exactly the parameters of that opportunity to be heard the Court balances:

> (1) the private interest that will be affected by the official action; against
> (2) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and
> (3) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.

*Id.* at 335 (cleaned up).

Regarding the two interests weighed and the first factor, "the interest in being free from physical detention by one's own government" "is the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Put another way, "freedom from imprisonment lies at the heart of the liberty that the Due Process Clause protects" *Zadvydas*, 533 U.S. at 690 (cleaned up); *accord Barrajas v. Noem*, No. 25-cv-00322, 2025 WL 2717650, at *6 (S.D. Iowa Sept. 23, 2025) (applying this rule to immigration detention). Regarding the second factor, "the Court considers 'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.'" *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025). Lastly, in looking at the risk of erroneous deprivation, courts consider the costs of additional procedure "including the

6

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Here, however, petitioner's Due Process Clause argument relates to the automatic stay provision that attaches at the appeal of a bond determination. (Doc. 1, at 16–17); s*ee* 8 C.F.R. § 1003.19(i)(2) (automatic stay following filing of a notice of intent to appeal by DHS). She argues the same in her reply brief, staying that "there is no process to challenge the automatic stay" and that "the government suggests that the appeal will be decided quickly when in fact it is their intention to appeal as many of these as possible knowing that the Board is already overburdened and taking months to decide bond appeals." (Doc. 13, at 12–13). The automatic stay provision does not apply here, and petitioner has not submitted any documentation to demonstrate the contrary or that there ever was an automatic stay in place. Respondents make no argument related to the automatic stay either. *See* (Doc. 11, at 16-17 (argument on due process)).

Any other passing references by petitioner to due process protections are too vague and unsupported for the Court to rely on. "The district courts cannot be expected to consider matters that the parties have not expressly called to their attention, even when such matters arguably are within the scope of the issues that the parties have raised." *Stafford v. Ford Motor Co.*, 790 F.2d 702, 706 (8th Cir. 1986); *see also Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir.2006) ("[W]e will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments."); *Gilbert v. Des Moines Area Com. Coll.*, 495 F.3d 906, 915 (8th Cir.2007) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." (internal quotation marks omitted)).

Therefore, despite the Due Process Clause potentially offering an avenue for relief, the Court finds petitioner's particular due process argument related to the automatic stay provision inapposite. Therefore, petitioner's request for habeas corpus relief is **denied** on this ground as well.[7]

### IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **denied**. This matter is **dismissed**. Judgment shall enter in favor of respondents. The Clerk of Court is directed to close this case.

**IT IS SO ORDERED** this 7th day of April, 2026.

C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

---

[7] To the extent that petitioner claims she is a member of the class in *Maldonado Bautista v. Santacruz* and that that class membership is an additional basis to order her release or a bond redetermination hearing, (Doc. 13, at 1, 14), that argument does not entitle her to relief either as that class-wide litigation is currently stayed. *See Maldonado Bautista v. Dep't Homeland Sec'y*, No. 26-1044 (9th Cir. Mar. 6, 2026), Dkt. 129 (temporarily staying the district court's February 18, 2026 order in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284, at *10 (C.D. Cali. Feb. 18, 2026)).

As to petitioner's argument that "the Board of Immigration Appeals decision would suspend habeas corpus without legislative approval," that argument only appears in petitioner's reply brief. (Doc. 13, at 13). That late-asserted argument is waived. *Mahaney v. Warren Cnty.*, 206 F.3d 770, 771 n.2 (8th Cir. 2000) (per curiam).